IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ANN WISEMAN and SARA HOWARD
individually and on behalf of all
others similarly situated                                                         PLAINTIFFS

v.                          CASE NO. 4:14CV478 BRW

TRANSAMERICA LIFE INSURANCE                                              DEFENDANT
COMPANY

PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION
FOR CONDITIONAL CLASS CERTIFICATION
AND COURT-AUTHORIZED NOTICE

**H**EARING **R**EQUESTED

I.      INTRODUCTION

This is a collective action under the Fair Labor Standards Act for wages owed. Transamerica is a life insurance company that provides life insurance and employs billing specialists to assist in providing those services. Transamerica requires billing specialists to clock in and out using a phone system, and that time is monitored for purposes of employee discipline. Billing specialists are told to report only their scheduled work times on their time sheets for purposes of compensation. As evidenced by the phone system records, billing specialists routinely perform work before their scheduled start times and during meal periods. Billing specialists also perform work after their scheduled end times. All billing specialists at Transamerica's Little Rock facility were subject to these policies.

As a result of this practice, billing specialists are not compensated for the work they perform outside of their scheduled shifts in violation of the FLSA. Plaintiffs bring this suit individually and on behalf of others similarly situated to recover the overtime wages owed by law, liquidated damages, attorneys' fees and expenses, and all other relief allowed by law. They seek conditional certification of a collective action and distribution of court-approved notice.

## II. STATEMENT OF FACTS

At the Little Rock Transamerica facility, billing specialists provide various services for Transamerica, including performing reconciliation and maintenance on existing policies as well as applying paid premiums to the appropriate accounts. (*Wiseman Dep.* [Ex. B] at 50:17–20, 53:13–20; *Howard Dep.* [Ex. C] at 15:5–11, 17:12–14). At the beginning of the day, billing specialists are required to report to work and swipe a badge to enter the facility. (*Wiseman Dep.* [Ex. B] at 56:21–57:1; *Howard Dep.* [Ex. C] at 36:3–4). Once the billing specialists enter their department and begin working, they are required to "clock in" using the phone located at their desk. (*Wiseman Dep.* [Ex. B] at 56:13–57:5; *Howard Dep.* [Ex. C] at 37:8–12). Billing specialists are also required to use this phone system to clock out when they take scheduled breaks and meal periods, as well as when they return from those breaks. (*Wiseman Dep.* [Ex. B] at 75:6–18; *Howard Dep.* [Ex. C] at 47:1–22). At the end of their scheduled shift, billing specialists are required to clock out for the day using the same phone system. (*Wiseman Dep.* [Ex. B] at 133:2–10; *Howard Dep.* [Ex. C] at 48:4–8). Transamerica closely monitors these clock times for purposes of employee discipline, and employees are disciplined if they clock

in after their scheduled start time or if they clock out prior to the end of their scheduled shift. (*Wiseman Dep.* [Ex. B] at 70:2–10; *Howard Dep.* [Ex. C] at 115:7–17).

Although Transamerica retains and monitors these clock records, billing specialists are not compensated based on the hours reflected in those records. Rather, all billing specialists are told to report a specific schedule on their time cards, regardless of their actual hours worked. (*Wiseman Dep.* [Ex. B] at 72:24–73:1, 75:15–18, 78:6–19; *Howard Dep.* [Ex. C] at 55:20–56:20, 62:15–20). Typically, billing specialists are required to report an eight-hour work day, including a one-hour unpaid meal break when billing specialists work a shift of eight hours or more. (*Wiseman Dep.* [Ex. B] at 50:2–5; *Howard Dep.* [Ex. C] at 28:11–12, 47:1–3). As a result, billing specialists are typically paid for 40 hours of work per week. (*Wiseman Dep.* [Ex. B] at 82:23–83:12, 97:21–23; *Howard Dep.* [Ex. C] at 120:8–23). Supervisors at the Little Rock facility have held meetings where they informed the billing specialists of this requirement. (*Howard Dep.* [Ex. C] at 57:4–18). Moreover, when Transamerica determines that it is necessary for billing specialists to work outside of their standard schedules, Transamerica informs the billing specialists what specific hours to record on their time sheets before the billing specialists even work those shifts. (*Correspondence from Supervisor Lemons to Billing Specialists* [Ex. D]).

Billing specialists routinely clock in and begin working prior to their scheduled start times in order to complete the large amount of work they are responsible for. (*Wiseman Dep.* [Ex. B] at 57:24–58:7; *Howard Dep.* [Ex. C] at 72:2–3). Although the billing specialists begin working prior to their scheduled time, they were informed by various supervisors to only list their specific start times on their time sheets. (*Wiseman Dep.* [Ex.

B] at 72:24–73:1, 75:15–18, 78:6–19; *Howard Dep.* [Ex. C] at 55:20–56:20, 62:15–20). Billing specialists also perform work after the end of their scheduled shifts, but likewise list the scheduled end time on their time sheets. (*Wiseman Dep.* [Ex. B] at 72:24–73:1, 75:15–18, 78:6–19; *Howard Dep.* [Ex. C] at 55:20–56:20, 62:15–20). While billing specialists were told to report a full one-hour meal period on their time sheets, they routinely take shorter meal breaks in order to complete their assigned projects. (*Wiseman Dep.* [Ex. B] at 75:6–18; *Howard Dep.* [Ex. C] at 47:1–22). When the named Plaintiffs reported to work in the mornings, they routinely observed other billing specialists clocking in via the phone system, and performing work prior to the billing specialists' scheduled start times. (*Wiseman Dep.* [Ex. B] at 48:7–25, 58:19–23; *Howard Dep.* [Ex. C] at 105:7–13, 106:11–13, 107:5–20).

### III. LEGAL STANDARD

  A.  *The FLSA's Two-Stage Certification Process.*

The FLSA authorizes collective actions for "similarly situated" employees to recover damages for its violations. *Ford v. Townsends of Ark., Inc.*, No. 4:08-cv-00509, 2010 U.S. Dist. LEXIS 46093, at *8 (E.D. Ark. Apr. 9, 2010). "These collective actions are intended to serve the interests of judicial economy and to aid in the vindication of plaintiffs' rights." *Id.* Although the Eighth Circuit has not clearly defined the phrase "similarly situated," this Court and others within this District apply a two-step approach to determine whether a class is similarly situated. *Id.* at *8. The first step is the "notice stage," and the second step is an "opt-in" merits stage. *Id.*

A class is similarly situated at the notice stage if plaintiffs make a modest factual showing, based on the pleadings and affidavits, that the proposed class members were victims of a single decision, policy, or plan. *Id.* Class members need not be identically situated. *Id.* Indeed, the Eleventh Circuit has described the standard for this first stage as "'not particularly stringent,' 'fairly lenient,' 'flexib[le],' 'not heavy,' and 'less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b).'" *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008) (internal citations omitted).

The second stage comes after discovery is largely completed and is prompted by a defendant's motion to decertify. *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 933 (E.D. Ark. 2012). At the second stage, the court then uses a stricter standard to determine whether the putative class members are similarly situated and whether the trial should proceed collectively. *Id.* To maintain a class at the second stage, plaintiffs must show that they are similarly situated with respect to their job requirements and pay provisions. *Id.* "Courts will consider three factors at this second stage: (1) the employment and factual settings of the plaintiffs; (2) the various defenses available to the defendants; and (3) considerations of fairness, procedure, and manageability." *Id.* (citing *Helmert v. Butterball*, No. 4:08CV00342 JLH, 2009 U.S. Dist. LEXIS 116460, at *6 (E.D. Ark. Dec. 15, 2009)).

### B. *"Off-The-Clock" Work Under the FLSA.*

Under the Fair Labor Standards Act, employees are entitled to payment at the overtime premium of time-and-a-half their regular rate of pay for work performed in excess of forty hours per week. 29 U.S.C. § 207. "[A]n FLSA plaintiff must prove by a

preponderance of the evidence that he or she performed work for which he or she was not properly compensated." *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 873 (citing *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999)). "Work not requested but suffered or permitted is work time." *Id.* (citing 29 C.F.R. § 785.11). "Work has been suffered or permitted if the employer 'knows or has reason to believe' that the work was being performed." *Burch v. Qwest Commc'ns Int'l, Inc.*, 677 F. Supp. 2d 1101, 1131 (D. Minn. 2009) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690 (1946)). "The FLSA imposes an obligation on the employer 'to exercise its control and see that work is not performed if it does not want it to be performed.'" *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (citing 29 C.F.R. § 785.13)). "The employer 'cannot sit back and accept the benefits without compensating for them.'" *Id.* (citing 29 C.F.R. § 785.13).

"[The employer's] duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." *Id.* (citing *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008)). "The mere promulgation of a rule against overtime work is not enough." *Id.* (citing 29 C.F.R. § 785.13). "Nor does the fact that the employee performed the work voluntarily necessarily take her claim outside of the FLSA." *Id.* (citing 29 C.F.R. § 785.11). Furthermore, an employer must compensate the employee for all hours worked, including the time worked during a missed meal period, even if the employee does not comply with company policy of reporting that time. *See* Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, FLSA2008-7NA, at *1-2 (May 15, 2008).

## IV. ARGUMENT

### A. The Court Should Conditionally Certify a Class of All Billing Specialists Who Worked at Transamerica's Little Rock Facility Within the Past Three Years.

All billing specialists at Transamerica's Little Rock facility are similarly situated and should be invited to join this action. At the notice stage, Plaintiffs must only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *Ford*, 2010 U.S. Dist. LEXIS 46093, at *8. In making this determination, courts should consider whether there is evidence that the individual plaintiffs had similar "factual and employment settings" and whether there was a "common policy or plan" that affected the potential plaintiffs. *See, e.g., Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-cv-00738, 2012 WL 334038, at *2 (S.D. Tex. Feb. 2, 2012) (quotations omitted).

Transamerica has a clear, "single decision, policy, or plan," which applies to all of its billing specialists at its Little Rock facility. It is undisputed that billing specialists are required to report to work and "clock in" when they begin working by using the phone located at their desk. (*Wiseman Dep.* [Ex. B] at 56:13–57:5; *Howard Dep.* [Ex. C] at 37:8–12, 95:7–10). Billing specialists are also required to use this phone system to clock out when they take scheduled breaks and meal periods, as well as when they return from those breaks, and at the end of their shifts. (*Wiseman Dep.* [Ex. B] at 75:6–18, 133:22–25; *Howard Dep.* [Ex. C] at 47:1–22, 64:1–7, 45:4–8). Transamerica is aware of the billing specialists' work time because the company closely monitors these clock times for purposes of employee discipline, and employees are disciplined if they clock in after

their scheduled start time or if they clock out prior to the end of their scheduled shift. (*Wiseman Dep.* [Ex. B] at 70:2–10; *Howard Dep.* [Ex. C] at 115:7–17). Although Transamerica is aware of the billing specialists' work time, it only pays the billing specialists based on the employee's scheduled hours. (*Wiseman Dep.* [Ex. B] at 82:23–83:12, 97:21–23; *Howard Dep.* [Ex. C] at 120:8–23). This policy applies to all billing specialists at Transamerica's Little Rock facility, and supervisors at the Little Rock facility have held meetings where they informed the billing specialists of this requirement. (*Howard Dep.* [Ex. C] at 57:4–18).

As a result of Transamerica's practice of requiring billing specialists to report a specific schedule on their time sheets rather than their actual hours worked, billing specialists are not compensated for the work they perform before and after those scheduled times. Billing specialists routinely clock in and begin working prior to their scheduled start times in order to complete the large amount of work they are responsible for. (*Wiseman Dep.* [Ex. B] at 57:24–58:7; *Howard Dep.* [Ex. C] at 120:8–23). Billing specialists also perform work after their scheduled end times, as well as during their meal periods. (*Wiseman Dep.* [Ex. B] at 75:6–18, 133:22–25; *Howard Dec.* [Ex. C] at 47:1–22, 45:4–8). Although the billing specialists work before and after their scheduled times, as well as during meal breaks, they were informed to only list their specific scheduled times on their time sheets. (*Wiseman Dep.* [Ex. B] at 72:24–73:1, 75:15–18, 78:6–19; *Howard Dep.* [Ex. C] at 55:20–56:20, 62:15–20). Likewise, when Transamerica changes the billing specialists' schedules, Transamerica requires the billing specialists to record specific work hours on their time sheets before they even work those shifts.

(*Correspondence from Supervisor Lemons to Billing Specialists* [Ex. D]). When the named Plaintiffs reported to work in the mornings, they routinely observed other billing specialists clocking in via the phone system, and performing work prior to the billing specialists' scheduled start times. (*Wiseman Dep.* [Ex. B] at 48:7–25, 58:19–23; *Howard Dep.* [Ex. C] at 105:7–13, 106:11–13, 107:5–20).

Plaintiffs have made a modest factual showing that all billing specialists were victims of a single decision, policy, or plan. Through their deposition testimony and written documents, Plaintiffs have shown that billing specialists clock in and out using a desk phone system, which records the billing specialists' time for purposes of employee discipline. Although Transamerica retained records of this time, Transamerica required billing specialists to report only their scheduled work times on their time sheets for purposes of compensation. All billing specialists are similarly situated and should be permitted to join this litigation.

### B.   The Court Should Provide Notice to Putative Class Members.

The Supreme Court of the United States determined that district courts have the authority to manage the process of joining multiple parties, consider a motion for conditional certification, and issue court-approved notice in the "appropriate case." *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989). According to the Supreme Court of the United States, determining what is an "appropriate case" lies within the "discretion" of the district court. *Id.* at 170. The benefits to the judicial system of FLSA collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed

decisions about whether to participate." *Id.* District courts are encouraged to become involved in the notice process early to insure "timely, accurate, and informative" notice and to help maintain control of the litigation. *Id.* at 171–72. This is an appropriate case for court-approved notice.

Here, prompt Court action is needed because the claims of the putative class members are being extinguished or diminished due to the running of the statute of limitations on their claims. *See Redman v. U.S. W. Bus. Res.*, 153 F.3d 691, 695 (8th Cir. 1998); *Hoffmann v. Sbarro*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997). Unlike Rule 23 class actions, the statute of limitations for those who have not filed consent forms is not tolled with the commencement of this action. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996). As a result, the statute of limitations continues to run on each individual's claim until they file a consent form with the Court. *Shabazz v. Asurion Ins. Serv.*, No. 3:07-0653, 2008 U.S. Dist. LEXIS 29696, at *2 (M.D. Tenn. Apr. 10, 2008). The consequence of this fundamental difference is self-evident; every day that passes is a day of damages each potential opt-in plaintiff will be unable to recover.

Plaintiffs' proposed notice, attached as Exhibit "A," has been carefully drafted to mirror other judicial notice forms that have been approved by courts around the country. It is narrowly drawn to notify potential class members of the pending litigation, the composition of the class, their right to "opt in" to the litigation, the effect of their doing so or not, and the procedure for doing so. It makes no comment whatsoever on the merits of the case. As required, it is "timely, accurate, and informative*." See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989). As such,

the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action and should be adopted.

Plaintiffs propose that to be timely, potential opt-in plaintiffs must return to Plaintiffs' counsel their signed consent forms, received or postmarked within 90 days after the date on which the Notice and Opt-In Consent Forms are mailed. Plaintiffs' counsel will file the Opt-In Consent Forms with the Court on an ongoing basis and no later than two weeks after the end of this 90-day notice period.

### C. The Court Should Order Defendants to Produce the Names and Addresses of the Putative Class Members to Carry Out Notice

As discussed above, all non-exempt billing specialists who were employed by Transamerica at their Little Rock facility since August 15, 2011, are "similarly situated" for purposes of the FLSA. Thus, their identification to Plaintiffs is necessary in order to provide them with notice of the action as contemplated by the law. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). This is precisely the reason why the production of a mailing list containing potential class members is routinely required in FLSA collective actions; such lists are necessary to facilitate notice. *Id.* at 165. *Shabazz*, 2008 U.S. Dist. LEXIS 29696, at *2; *Henry v. Quicken Loans Inc.*, No. 04-40346, 2006 U.S. Dist. LEXIS 70220, at *7 (E.D. Mich. Sept. 28, 2006) ("Having granted conditional class certification to Plaintiffs, this Court has the discretion to compel the production of the list of loan consultants in order to facilitate notice."). Moreover, the identity of putative class members is discoverable on other grounds. *See Hoffmann-LaRoche*, 493 U.S. at 170 (acknowledging the existence of "alternative bases for the discovery, for instance that

the employees might have knowledge of other discoverable matter"); *Morden v. T-Mobile USA, Inc.*, No. C05-2112, 2006 U.S. Dist. LEXIS 42047, at *3 (W.D. Wash. June 22, 2006) (compelling the defendant to produce the names and addresses of potentially similarly-situated employees in order to define the proposed class).

If this Court grants Plaintiffs' motion, the Court should also order Transamerica to provide Plaintiffs a list of all putative class members necessary to carry out notice. This list should contain the last known contact information for each putative class member, including for each his/her name, last known address, telephone number, dates of employment, and e-mail address.

The Court should also require Transamerica to post notice of this lawsuit at the relevant workplace and include the notice in the employees' next paycheck in addition to mailing notice. *Garcia v. Salamanca Grp.*, No. 07C4665, 2008 U.S. Dist. LEXIS 22852, at *5 (N.D. Ill. March 24, 2008) (authorizing notice to be sent by mail and posted at defendant's restaurants); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. 2006) (finding that first class mail combined with posting provided for the "best notice practicable" to the potential class).

### V. Conclusion

Plaintiffs have provided adequate evidence to meet their lenient burden of showing they were victims of a common policy. At Transamerica, billing specialists were required to clock in and out using a desk phone system. Although Transamerica monitored these records for purposes of employee discipline, the billing specialists were told to only list their scheduled work schedules on their time sheets for purposes

of compensation. As a result, the work the billing specialists performed outside of their scheduled shifts was uncompensated work time. All Transamerica billing specialists are similarly situated. The Court should:

    A. Grant Plaintiffs' motion for conditional certification;

    B. Approve Plaintiffs' proposed notice and authorize its mailing; and

    C. Order Defendants to produce the names and addresses of class members within 10 days of the order granting conditional certification.

Respectfully submitted,

/s/ Timothy A. Steadman
John T. Holleman – AR Bar #91056
jholleman@johnholleman.net
Maryna O. Jackson – AR Bar #2009111
maryna@johnholleman.net
Timothy A. Steadman
tim@johnholleman.net
HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

Lloyd W. "Tre" Kitchens (AR Bar #99075)
THE BRAD HENDRICKS LAW FIRM
500 C Pleasant Valley Drive
Little Rock, AR 72227
Home: (501) 588-0549
Fax: (501) 661-0196

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

  I, Timothy A. Steadman, certify that a true and accurate copy of the foregoing document was sent via CM/ECF on this 2nd day of February, 2015 to the following:

Carolyn B. Witherspoon (*cspoon@cgwg.com*)
Abtin Mehdizadegan (*abtin@cgwg.com*)

CROSS, GUNTER, WITHERSPOON
 & GALCHUS, P.C.
500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201

          /s/ Timothy A. Steadman
          Timothy A. Steadman